UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

STEVEN M. CRUICKSHANK,

            Plaintiff,           Case No. 2:20-cv-60

v.                                Honorable Robert J. Jonker

JAMES LAMBROS et al.,

            Defendants.
_____/

## OPINION

This is a civil rights action brought by a pretrial detainee under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

**I.    Factual allegations**

Plaintiff presently is a pretrial detainee at the Chippewa County Correctional Facility (CCCF). The events about which he complains occurred at that facility. Plaintiff sues the

CCCF, 50th Circuit Court (Chippewa County) Judge James Lambros, Chippewa County Sheriff Michael Bitner, and Chippewa County Lieutenant Paul Stanaway.

Plaintiff alleges that the individual Defendants are responsible for the adoption of a law-library policy for the CCCF that violates his rights under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. Attaching a copy of the CCCF Inmate/Detainee Handbook, Plaintiff contends that ICE detainees are treated differently than American citizens for the purpose of accessing the library. He specifically references the following portion of the handbook:

### LIBRARY

A book cart will be brought to your housing unit. You may select reading material from the cart. You are responsible for returning the reading material when the book cart is brought back to your housing unit in a neat and orderly manner. No more than (3) three books will be allowed in your sleeping quarters at one time, other than religious or legal material, and authorized school books. We will accept books sent in from a book distributor such as Amazon and Book World. Once books are sent in they become property of Chippewa County Correctional Facility.

You may obtain research material for criminal court cases through your attorney. Inmates and detainees will have access to soft cover law books and other legal materials provided by the inmate/detainee's attorney. If you are representing yourself and the court has not appointed an attorney to help you, you may get research material through the court.

**We do not have a law library.**

We do have the Lexis Nexis system for ICE detainees only.

ICE detainees will have access to the Lexis Nexis Law Library. Access to the Lexis Nexis Law Library is granted via request from the detainee and/or availability of the classroom. If the classroom is unavailable at the time of the request, the detainee will be granted access once the classroom becomes available.

Upon request, each ICE detainee shall be permitted to use the Lexis Nexis law library for a minimum of five (5) hours per week. Additional time in the law library shall be accommodated to the extent possible, consistent with the orderly and secure operation of the facility. Detainees housed in administrative and/or disciplinary segregation shall have the same access

> as the general population unless security concerns require limitations. Upon request, ICE detainees may assist other detainees in researching and preparing legal documents except when such assistance poses a security risk. This assistance shall be voluntary. Detainees are restricted from charging a fee and/or [ac]cepting anything of value for assisting.
>
> Inmate/detainees are permitted to retain all legal materials while housed in CCCF unless the material creates a safety, security, and/or sanitation risk(s). Large amounts of legal material will be stored in the Sergeant's office and available upon request. Requests for access to stored legal material will be granted no later than twenty[-]four (24) hours after receiving the request.
>
> **If for some reason the Lexis Nexis computer is not working correctly, notify your Unit officer.**

(CCCF Handbook, ECF No. 1-1, PageID.17 (emphasis in original).) Plaintiff argues that, under the handbook, he is treated less favorably as a citizen of the United States than is a non-citizen ICE detainee, presumably in violation his right to equal protection.[1] Plaintiff also claims that he is denied his right to legal research, in violation of the First Amendment.

Plaintiff seeks injunctive relief, together with monetary damages.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim

---

[1] Although Plaintiff uses the words "due process" at one point in his supplement to his complaint (ECF No. 4), his concomitant allegations of "discrimination" and unequal treatment sound solely in equal protection. (*Id.*, PageID.26.)

3

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Correctional Facility As Defendant

Plaintiff sues the CCCF. The correctional facility is a building, not an entity capable of being sued in its own right. However, construing Plaintiff's *pro se* complaint with all required liberality, *Haines*, 404 U.S. at 520, the Court assumes that Plaintiff intended to sue Chippewa County. Chippewa County may not be held vicariously liable for the actions of its employees under § 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v.*

*Harris*, 489 U.S. 378, 392 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, a county is liable only when its official policy or custom causes the injury. *Id.*

In matters pertaining to the conditions of the county correctional facility and to the operation of the deputies, the sheriff is the policymaker for the county. Mich. Comp. Laws § 51.75 (sheriff has the "charge and custody" of the jails in his county); Mich. Comp. Laws § 51.281 (sheriff prescribes rules and regulations for conduct of prisoners); Mich. Comp. Laws § 51.70 (sheriff may appoint deputies and revoke appointments at any time); *Kroes v. Smith*, 540 F. Supp. 1295, 1298 (E.D. Mich. 1982) (the sheriff of "a given county is the only official with direct control over the duties, responsibilities, and methods of operation of deputy sheriffs" and thus, the sheriff "establishes the policies and customs described in *Monell*"). Thus, the court looks to the allegations in Plaintiff's complaint to determine whether Plaintiff has alleged that the sheriff has established a policy or custom which caused Plaintiff to be deprived of a constitutional right.

Upon review, it appears that Plaintiff has alleged that the county judge and the county sheriff, as parties responsible for setting policy for accessing legal materials, have adopted a correctional facility policy that violates the First and Fourteenth Amendments. As a consequence, although the CCCF must be dismissed, the Court concludes that Plaintiff intends to allege a claim against Chippewa County and will consider Plaintiff's claims accordingly.

**IV.     Access to the Courts**

Plaintiff argues that he has been denied his First Amendment right to legal materials. Presumably, he intends to allege that the lack of a law library and the policy limiting access to Lexis Nexis deprives him of his First Amendment right to access the courts.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of

5

legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff utterly fails to demonstrate actual injury. He simply states that he is "restricted from defending [him]self on [his] case and can not research [his] civil rights." (Compl., ECF No. 1, PageID.3.) Such a conclusory allegations falls far short of the specific allegations required by *Lewis*, 518 U.S. at 351-53, and *Christopher*, 536 U.S. at 415.

Moreover, a prisoner who is represented by counsel has no freestanding right to access a jail law library. An inmate's right of access to the courts is fully protected if he is represented by counsel. *Skelton v. Pri–Cor, Inc.*, 963 F.2d 100, 104 (6th Cir. 1991); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984); *Holt v. Pitts*, 702 F.2d 639, 640 (6th Cir. 1983); *see also United States v. Sammons*, 918 F.2d 592, 602 (6th Cir. 1990) (defendant's waiver of right to court-appointed counsel and decision to represent self in defense of criminal prosecution constituted waiver of right of access to law library). Plaintiff is awaiting trial and presumably is represented by counsel. Regardless, as discussed, if Plaintiff waived his right to counsel, he has waived his right for legal materials related to his criminal prosecution. *Sammons*, 918 F.2d at 602.

For these reasons, Plaintiff fails to state an access-to-the-courts claim.

**V.      Equal Protection**

Plaintiff asserts that the correctional facility policy discriminates against him in relation to ICE detainees with respect to the ability to access Lexis Nexis for legal research.

A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir. 1998). In addition, as the Court has discussed, Plaintiff fails to demonstrate that his First Amendment right to access the courts has been affected by the policy.

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). An "equal protection" plaintiff must be similarly situated to his comparators "in all relevant respects . . . ." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011); *see also Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) ("'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"); *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

Here, pretrial detainees like Plaintiff and ICE detainees are not similarly situated in all relevant respects. Unlike criminal defendants, ICE detainees have no right to an attorney. As a consequence, their ability to defend against removal from the country is dependent on their own ability to conduct legal research. That distinction is reflected in the handbook itself, which distinguishes criminal defendants without an attorney, who may seek research material directly from the court, and criminal defendants who have an attorney, who must seek research material from their attorneys. Because of the difference in represented status, criminal detainees like Plaintiff are not similarly situated with ICE detainees.

The two groups are not similarly situated for another reason. The terms of confinement for ICE detainees are dictated and paid for by the federal government, whereas the expenses of the inmates held in the jail for violating Michigan law are paid by the state. The kind of discrimination alleged by Plaintiff does not violate the Equal Protection Clause, because it results from the action of two separate sovereigns. *See Jackson Water Works v. Public Utilities Comm'n,* 793 F.2d 1090, 1095 n.2 (9th Cir. 1986) ("[T]he equal protection clause does not apply when the dissimilar treatment involved is the result of differences between the laws not of one state, but of different sovereignties."); *see also Terry v. Calhoun Cty. Corr. Fac.*, No. 1:12-cv-347, 2012 WL 5198376, at *5 (W.D. Mich. Oct. 19, 2012) (holding that distinctions in law-library access between ICE detainees and state criminal defendants did not violate the Equal Protection Clause because the differences were based on the rules of different sovereigns); *Oses v. United States,* 833 F. Supp. 49, 53 (D. Mass. 1993) (holding that federal government and states are separate sovereigns and that federal government need not treat time served under federal sentence as equivalent of time served under preceding state sentence). As separate sovereigns, the federal government and the state government need not provide the same amenities to prisoners. Indeed,

ICE requires facilities that contract with the federal government to house ICE detainees provide access to a properly equipped law library and/or online research media. *See* ICE Detention Standards, Law Libraries and Legal Materials, § 6.3 at 421 (rev. Dec. 2016), https://www.ice.gov/doclib/detention-standards/2011/6-3.pdf. The State of Michigan, in contrast, does not mandate specific law-library resources in county jails.

Plaintiff does not allege that he was treated differently from other similarly situated state detainees held at the CCCF. Given the significant differences between pretrial detainees held in state jails on state crimes and the ICE detainees housed at the same facility on federal immigration allegations, the distinction drawn between the groups by the library policy is entirely rational.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.

Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   May 27, 2020             /s/ Robert J. Jonker
                                  ROBERT J. JONKER
                                  CHIEF UNITED STATES DISTRICT JUDGE